UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JARED MATTHEW BARDEN,

              Plaintiff,

   v.

ANDREW J. SKAAR, et. al.,

              Defendant.

CASE NO. C17-226-JCC-BAT

**REPORT AND RECOMMENDATION**

Jared Matthew Barden, an inmate at the Washington State Penitentiary filed a *pro se* civil rights complaint against Detective Andrew J. Skaar and the King County Jail Public Health Supervisor. In his amended complaint filed March 3, 2017, Mr. Barden alleges he was injured by the detective while being transported to King County Jail, and that he received deficient medical treatment for these injuries while incarcerated. Dkt. 7. On September 25, 2017, defendants filed a motion for summary judgment, noted for October 20, 2017. Dkt. 21. Defendants also filed the required *Rand* warnings. Dkt. 24. Mr. Barden's responsive brief was due on October 16, 2017. Mr. Barden has not filed a response or indicated that he intends to do so. For the reasons below, the Court recommends defendants' motion for summary judgment, Dkt. 21, be granted and the case be dismissed.

REPORT AND RECOMMENDATION - 1

# FACTS

## A. Mr. Barden's Complaint

### 1. Detective Andrew Skaar

The amended complaint alleges Detective Skaar arrested Mr. Barden on September 18, 2016, and placed him into the back of his SUV patrol vehicle without properly securing Mr. Barden's seatbelt. Dkt. 7, at 3. Mr. Barden alleges Detective Skaar drove recklessly and slammed on the brakes, causing Mr. Barden to lurch forward and "split his forehead open" because he was not properly secured. *Id*.

### 2. Medical Treatment

Mr. Barden alleges after Detective Skarr arrested him, he was taken to the King County Jail. He claims he informed medical intake nurses about being injured in Detective Skaar's SUV but was not treated for his injury. *Id*. He also alleges he told medical staff about his chronic back pain. *Id*. In his original complaint, Mr. Barden claims he filed a medical kite and medical grievance several weeks after the incident, but was still not properly treated. Dkt. 5. Mr. Barden further claims that as a result of allegedly deficient medical care, he has experienced pain and suffering, memory loss, and a scar on his forehead. *Id*.

## B. Facts Proffered by Defendants

### 1. Detective Andrew Skaar

In support of the motion for summary judgment, Detective Andrew Skaar filed an affidavit asserting he was not on patrol duty on September 9, 2016, the night of Mr. Barden's arrest, and was not involved in his arrest, or transport to the jail. *See* Dkt. 23, Declaration of Andrew Skaar. Rather, the detective asserts Mr. Barden was arrested outside of the detective's working hours; on that day, Detective Skaar states he worked from 7:27 AM to 6:02 PM, and

1  that Mr. Barden was arrested at 3:00 AM. *Id*. at ¶4. Detective Skaar states his name is listed on

2  Mr. Barden's arrest superform because Detective Skaar conducted the follow-up investigation

3  based on the reports the patrol deputies submitted after Mr. Barden's arrest. *Id*. Based on these

4  reports, Detective Skaar determined there was probable cause for a crime, prepared a case packet

5  and Certification of Probable Cause, and forwarded the case to the King County Prosecutor's

6  Office for filing. *Id*. Detective Skaar asserts he had no personal involvement in Mr. Barden's

7  arrest. *Id*.

8      **2. Medical Treatment**

9      Defendants also submitted an affidavit that asserts Mr. Barden was seen for an intake

10 assessment by a Jail Health Services ("JHS") nurse when he was first booked into the King

11 County Jail. *See* Dkt. 22, Declaration of Benjamin Sanders, at ¶7. According to defendants, Mr.

12 Barden did not report any head or back pain during his intake, nor did he mention being injured

13 while he was being transported to the jail. *Id*. The affidavit indicates the treating nurse observed

14 a small superficial abrasion on Mr. Barden's forehead, but did not see any active bleeding. *Id*.

15     On September 19, 2016, 10 days after his arrest and the transport incident, Mr. Barden

16 received a comprehensive medical examination at the King County Jail at the Maleng Regional

17 Justice Center. *Id*. at ¶9. Mr. Barden again did not mention any issues with his transport or any

18 head or back pain. *Id*. The nurse did not note any visible trauma to Mr. Barden's head, face, or

19 neck, and Mr. Barden affirmatively denied any current medical issues. *Id*. Mr. Barden was again

20 seen by JHS staff on September 24, 2016 for shortness of breath and chest pain. *Id*. at ¶11. The

21 nurse noted these symptoms were likely due to anxiety, and again, Mr. Barden did not mention

22 any issues with his head or back. *Id*. Mr. Barden was next seen for a medical assessment by JHS

23 staff on October 1, 2016. *Id*. at ¶12. During this visit, he reported he had been out of jail for five

days and that he had "disc problems" and chronic back pain. *Id*. However, Mr. Barden did not mention any connection between his back pain and his transport to the jail, and further refused Ibuprofen or Tylenol. *Id*. The following day on October 2, 2016, Mr. Barden was seen for intake again on another booking. *Id*. at ¶13. During this visit, he reported high blood pressure, hearing impairment, schizoaffective disorder, and depression. *Id*. He did not report any dizziness, headache, or blurred vision, and the nurse observed no medical issues besides high blood pressure. *Id*. In total, Mr. Barden was seen by JHS staff a total of 39 times from October 2, 2016, to his transfer to prison on April 18, 2017. He did not complain of neck or back pain during any of these visits. *Id*. at ¶14.

Mr. Barden submitted a medical kite on October 21, 2016, and a medical grievance on October 23, 2016, in which he described the transport incident and complained of pain. *Id.*, *see also* Dkt. 5-1. He was then seen by JHS staff on October 21, 2016 and October 22, 2016, but during those visits, Mr. Barden reported only that he was feeling depressed, needed to see a mental health professional, and had dry, cracked feet. *Id*. at ¶15.

Mr. Barden attached his medical kite and grievance, superform from his arrest, several medical visit summaries, and his booking photo to his complaint. He presents no other evidence to demonstrate that JHS staff knew of, or had reason to know of, his head and back injury, or that they failed to provide him with appropriate medical treatment.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

1   Courts apply a burden-shifting analysis in determining whether to grant or deny a motion
2   for summary judgment. Where the non-moving party—Mr. Barden— bears the burden of
3   proving the claim at trial, the moving party—defendants—can meet its initial burden in two
4   ways: (1) by presenting evidence to negate an essential element of the non-moving party's case;
5   or (1) by demonstrating that the non-moving party failed to make a showing sufficient to
6   establish an element essential to that party's case on which that party will bear the burden of
7   proof at trial. *Celotex Corp.*, 477 U.S. at 323–24; Fed. R. Civ. P. 56(c)(1).

8   If the moving party meets its initial burden, the burden then shifts to the opposing party
9   to produce sufficient evidence to establish that a genuine dispute as to a material fact actually
10  exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the
11  moving party shows the absence of a genuine issue of material fact, the non-moving party must
12  go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial." *Leisek*
13  *v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex Corp. v. Catrett*, 477
14  U.S. 317, 323-24 (1986)). The non-moving party may not rely upon mere allegations or denials
15  in the pleadings but must set forth specific facts showing that there exists a genuine issue for
16  trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A plaintiff must "produce at
17  least some significant probative evidence tending to support" the allegations in the complaint.
18  *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).

19  If a summary judgment motion is unopposed, Rule 56 "authorizes the court to consider a
20  fact as undisputed," but it does not permit the court to grant summary judgment by default.
21  *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013). Here, Mr. Barden did not respond
22  to defendants' summary judgment motion. He has thus failed to provide any probative evidence

REPORT AND RECOMMENDATION - 5

tending to support the allegations in this amended complaint, or contradicting defendants' factual assertions. The Court accordingly considers the facts proffered by defendants as undisputed.

## DISCUSSION

To be entitled to relief under 42 U.S.C. § 1983, Mr. Barden must show: (i) the conduct complained of was committed by a person acting under color of state law; and (ii) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is not merely a "font of tort law." *Parratt*, 451 U.S. at 532. That Mr. Barden may have suffered harm, even if due to another's negligent conduct, does not in itself, necessarily demonstrate an abridgment of constitutional protections. *Davidson v. Cannon*, 474 U.S. 344, 347 (1986).

Personal participation is an essential element of a § 1983 claim. *See e.g., Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978). Supervisory officials cannot be held liable under a theory of respondeat superior. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2008). To be liable under § 1983, a person must do an affirmative act, participate in another's affirmative act, or fail to perform an act that the person is legally required to do. *Johnson v. Duffy*, 588 F.2d at 743-44. Mere knowledge of a subordinate's unconstitutional actions is not enough to establish liability. *See Iqbal*, 556 at 677. Here, the evidence presented by defendants, and which has not been contradicted by Mr. Barden, establishes Defendant Andrew J. Skaar had no personal participation in the alleged constitutional violations.

**A.   Detective Andrew J. Skaar**

Mr. Barden alleges Detective Andrew J. Skaar arrested him on September 9, 2016, and placed him in the back of his patrol vehicle without a seatbelt. Dkt. 7, at 3. To support his claim,

REPORT AND RECOMMENDATION - 6

Mr. Barden attaches his arrest superform, on which "Skaar, Andrew J" is listed as the arresting officer. However, defendants refute Mr. Barden's allegations through Detective Skaar's affidavit. *See* Dkt. 23, Declaration of Detective Skaar. In his affidavit, Detective Skaar states he was not the arresting officer. Dkt. 23, at ¶15. He did not respond to the call regarding Mr. Barden on September 8, 2016, did not arrest him, and was in fact off-duty at the time. *Id*. Moreover, Detective Skaar's assigned vehicle was a Chevy Impala, while Mr. Barden contends that he was transported in an SUV. *Id*. The uncontested facts presented by defendants thus establish Detective Skaar was not involved in Mr. Barden's arrest and subsequent transport to the King County Jail. Because there is no evidence that Detective Skaar had any personal participation in transporting Mr. Barden, the claims against him should be dismissed with prejudice.

**B.      Jail Health Services Staff – Deliberate Indifference**

The undisputed affidavits that defendants submitted show defendants were not deliberately indifferent to Mr. Barden's medical needs, or the alleged injuries he claims he sustained during the transport to the jail. To establish an Eighth Amendment violation related to medical care, an inmate must prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1241 (9th Cir. 2010). Prison officials may be deemed to have been deliberately indifferent to an inmate's serious medical needs "when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (quoted sources and internal quotation marks omitted). However, a prison official may be held liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). "A 'serious' medical need exists if the failure to treat a

prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting *Estelle*, 429 U.S. at 104), *overruled on other grounds by WMX Techs. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

Mr. Barden's allegations regarding his medical care are vague at best. Based on the uncontested affidavits defendants submitted, there is no evidence that King County Jail Health Services denied, delayed, or intentionally interfered with Mr. Barden's medical treatment, or even knew about head and back injury allegedly sustained during the transport incident. On the contrary, the defendants' affidavit establishes Mr. Barden was regularly seen by nurses for a variety of different medical complaints. *See* Dkt. 22. Mr. Barden only mentioned his back pain to JHS Staff once, during his October 1, 2016 intake. *Id*. at ¶12. There, Mr. Barden reported that he had been out of jail for 5 days and that he had "disc problems" and chronic back pain. *Id*. The nurse offered him Ibuprofen and Tylenol, but Mr. Barden refused. *Id*. Mr. Barden did not mention any connection between his back pain and his transport to the jail on his previous booking, nor did he mention any head pain. *Id*.

Thus, the undisputed facts set forth in defendants' affidavit clearly show defendants were anything but indifferent. Mr. Barden was seen immediately upon intake by medical staff, and was continually seen many times for a variety of ailments. Mr. Barden, however, never mentioned to the jail medical staff that he had been injured while being transported to the jail in September 2016, and never stated any of his ailments resulted from the transportation incident he complains of. Defendants cannot be deliberately indifferent regarding medical needs that Mr. Barden never complained of. In short, viewing the undisputed evidence in the light most favorable to Mr. Barden, there is no evidence that defendants were deliberately indifferent to Mr.

REPORT AND RECOMMENDATION - 8

1 Barden's medical needs. Defendants are thus entitled to judgment as a matter of law as to this
2 claim.

3 **C.      King County – *Monell* Liabilty**

4       A local governmental unit or municipality can be sued as a "person" under § 1983.
5 *Monell v. Department of Social Servs., of City of New York*, 436 U.S. 658, 691 (1978). However,
6 to prove municipal liability under 42 U.S.C. § 1983, the plaintiff must show that the
7 unconstitutional deprivation of rights arises from a governmental custom, policy or practice. *Id*.
8 To state a constitutional claim against a municipality, a plaintiff must: (1) identify the specific
9 "policy" or "custom," (2) fairly attribute the policy or custom and fault for its creation to the
10 municipality and (3) establish the necessary "affirmative link" between the identified policy or
11 custom and the specific constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 389
12 (1989). Moreover, liability exists only where the municipality acts with "deliberate indifference"
13 to the rights of the plaintiff. *Id*. at 388.

14       Here, Mr. Barden names as a defendant Public Heath Seattle and King County. The Court
15 construes this as a claim against King County because the King County Jail, and Public Health
16 King County ("PHKC") are governmental agencies that normally cannot be sued under § 1983.
17 *See Howlett v. Rose*, 496 U.S. 356, 365 (1990).  King County, a municipality, however, can be
18 sued under § 1983. *See Monell,* 436 U.S. at 690.

19       However, based upon the undisputed facts, there is no evidence supporting a *Monell*
20 claim against King County. First, there is no evidence the jail's medical staff was deliberately
21 indifferent to Mr. Barden's medical needs. Rather as discussed above, the jail provided regular
22 and timely medical attention and Mr. Barden never complained to the staff that he was injured
23 during the transport to the jail. Because there is no evidence that Mr. Barden's constitutional

REPORT AND RECOMMENDATION - 9

rights were violated by jail staff, there is no *Monell* liability. Additionally, Mr. Barden has presented nothing showing there is a custom, policy or practice of King County regarding medical care that violated his constitutional rights in either his original or amended complaint. Given the undisputed facts before the Court that shows jail staff were not deliberately indifferent to Mr. Barden's medical needs and the lack of any evidence that the County has a policy of deliberate indifference to inmates' medical needs, the Court should dismiss Mr. Barden's claims against King County.

## CONCLUSION

Defendants filed a motion for summary judgment. Mr. Barden has failed to respond to the motion. The Court has reviewed the motion and supporting affidavits and concludes that based upon the undisputed facts presented by defendants, Mr. Barden's claims should be dismissed as a matter of law. Defendants have established that Detective Skaar did not arrest or transport Mr. Barden on the night he allegedly sustained injuries. Summary judgment in favor of Detective Skaar should be granted given his complete lack of personal participation in the alleged incident.

Defendants have also established Mr. Barden received medical attention at the jail as soon as he arrived there after his arrest. Mr. Barden continued to receive regular medical attention for a variety of ailments. According to the medical records, Mr. Barden did not complain on intake that he had been injured in September 2016 while he was being transported to the jail. Mr. Barden also did not complain later to the jail that any of his symptoms resulted from the transport incident. These undisputed facts establish Mr. Barden's claim that jail medical staff were deliberately indifferent to his medical needs should be dismissed as a matter of law.

And lastly as a matter of law, Mr. Barden's *Monell* claim should be dismissed. There is no evidence jail staff were deliberately indifferent to Mr. Barden's medical needs and no

1  evidence that King County has a policy, custom or practice to be deliberately indifferent to
2  inmates at the jail.

3  **OBJECTIONS AND APPEAL**

4  This Report and Recommendation is not an appealable order. Therefore a notice of
5  appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the
6  assigned District Judge enters a judgment in the case.
7  Objections, however, may be filed and served upon all parties no later than **November
8  15, 2017.** The Clerk should note the matter for **November 17, 2017**, as ready for the District
9  Judge's consideration if no objection is filed. If objections are filed, any response is due within
10 14 days after being served with the objections. A party filing an objection must note the matter
11 for the Court's consideration 14 days from the date the objection is filed and served. The matter
12 will then be ready for the Court's consideration on the date the response is due. Objections and
13 responses shall not exceed twelve (12) pages. The failure to timely object may affect the right to
14 appeal.
15 DATED this 25th day of October, 2017.

BRIAN A. TSUCHIDA
United States Magistrate Judge